Good morning. My name is Mark Dabofsky. I represent the Plaintiff Appellant Mark Stephan. May it please the Court, Counsel, first I would like to reserve three minutes for my rebuttal. Just watch the clock, Counsel. Thank you, Your Honor. On August 11, 2007, Mark Stephan's monthly earnings were at a level that entitled him to a disability benefit of $20,000 per month. Well, that's a conclusion. That's a conclusion, and that's the conclusion that this Court is going to have to reach, based on the terms of the policy, the applicable standard of review, and the evidence presented to the Court. First of all, the Court applied a deferential standard of review, even though the policy was issued in 2007, following the California settlement agreement between the State of California and Unum that required that all policies sold after the date of that agreement could not incorporate a discretionary clause. This policy stated that it was replaced in its entirety, or that it was replacing the prior policy in its entirety, yet it included a discretionary clause. Yes, but the language remained completely unchanged since the 1999 policy. The policy was not unchanged, Your Honor. The policy had an entirely different definition of disability. And every single page of that policy said at the bottom, 1-1-2007. It was a new policy. Yes, but what specific language change is relevant to this case? Other than the definition of disability, I'm not sure that there was any specific change, because the definition of monthly earnings would have been the same. So why should we say it's an amended policy? Why can't we just say it's a renewal of the old policy? Because the policy says on the first page that it's – it replaces the prior policy. It's a new policy. But even if the Court were to take the same position that the district was in, it's a new policy. It says amendment number 6. This amendment forms a part of group policy number such and such issue to the policy holder. So it's still called the same policy, right? And it says the entire policy is replaced by the policy attached to this amendment. In other words, the amendment is the new policy. It's just totally circular. So why should we think – ultimately, the question is, was the intent of the agreement to apply to renewals or not? In other words, are you agreeing that if he had simply paid for his premium for the next year, that the agreement would not have applied? There's a lot of questions in that question, Your Honor. Actually, I think there's one question in the question. There is one direct question, but first with respect to the policy of insurance. Not only does the policy state that it replaces the prior policy, but we've also cited case law indicating that even if it were a renewal, it should be considered a new policy. Well, that's what I'm asking. That was my question, my second question, the one I want you to answer. Okay? And the other part of Your Honor's question had to do with the premiums. There is nothing in this policy that states that the amount of benefit paid requires that the appropriate premium for that benefit be paid in advance of that benefit be due in owing. Thomas Weissel Partners and Unum had a course of commercial dealings between each other that allowed Thomas Weissel Partners to true up the premiums the following years when the bonuses were paid. This is clearly delineated in the record. So the argument that the premiums had not been paid in advance is really a red herring argument. But what difference does that make here since the event occurred before the bonus was given, and the bonus was given only as a matter of grace? The bonus was not given only as a matter of grace, Your Honor. The offer letter to Mr. Stefan said that this is guaranteed compensation. Mr. Stefan's --- I object to the provisos in that passage. That he provides satisfactory performance. There's no indication he did not provide satisfactory performance. He wasn't free. If you no longer report to work, you're not providing satisfactory performance, are you? In the conversation that took place between Thomas Weissel's general counsel, Mark Fisher, and Stephanie Lesur of Unum, Mr. Fisher indicated to Ms. Lesur that Mr. Stefan remained employed by Thomas Weissel Partners. That conversation took place in February of 2008, and Mr. Stefan further stated that he would continue to be employed for 12 months. Thomas Weissel Partners took the position that this was a binding contract and that they owed Mr. Stefan the pro rata share of the bonus that he had earned prior to his unfortunate accident in August of 2007. If he would have died before the end of the year, he wouldn't have been entitled to the bonus, would he? I don't know. I think that Thomas Weissel Partners would have probably taken the same position. Well, that would be as a matter of grace that they would have done that. But what was unreasonable about making this determination? Well, maybe we would have made a different determination, but what was unreasonable this was not something off the wall that they determined. Well, this wasn't something where if you look at the offer letter, the offer letter that's in the record states to Mr. Stefan, you will be a participant in our discretionary bonus program. And then the next sentence begins, but your bonus for the first year is guaranteed. Well, your position is there could be no other view of this under the facts of this case. My question to you is, is that our standard of review? Can we say, well, we're looking at this and, yes, if we were making the determination, we would go your way. But someone that could look at it and say, no, look, he didn't earn it until he got sick. I mean, and we can't say that's unreasonable. It's not the way we would have gone. Well, let's accept for the sake of argument that a deferential standard of review applies. This Court issued the Abatey decision. The Supreme Court shortly thereafter issued the Glenn decision, indicating that the conflict of interest has to be a factor to be taken into consideration. This decision, this interpretation of the policy is made purely on a self-serving basis by UNA. And under the Abatey decision, which looks at various factors in the Glenn decision that says that all factors have to be taken into consideration, and the Glenn decision emphasizes on the fiduciary obligation that the insurance company in this instance would owe to the policyholder, to Thomas Weissel and to Mr. Steffen. And given the language in the policy that gives discretion both to the plan administrator, Thomas Weissel Partners, and to UNAM, that UNAM's disregard of Thomas Weissel Partners' position that Mr. Steffen's monthly earnings on August 11th, 2007, would not be  And the fact that the plan administrator's monthly earnings on August 11th, 2007, was the equivalent of $500,000 a year, could not be disregarded. What does the plan administrator have to do to say, you know, mea copa, I've taken my structural conflict of interest in into mind and into consideration, and I've determined that you're not entitled to the bonus? Well, in this instance, it's not. It's true that the structural conflict has not invaded their reasonableness. In this instance, and consistent with the factors that Abatey pointed to, when the plaintiff submitted a report from a certified public accountant, saying this is a general accounting principle, and when Mark Fisher called up Stephanie Lesur and said, why don't you get an accountant to look at this? And Unum never had an accountant look at this. They didn't insulate themselves from their conflict. Had they done so, then they might have insulated themselves. But there is nothing that took place between the submission of the appeal and the decision that was rendered on the pre-suit claim appeal, other than the two memos that were generated by Unum's counsel, Mike Parker, which is another issue that we wanted to talk about today, which is the applicability of the fiduciary exception. Can I ask a question? The one thing that seems somewhat unusual about this case is that the company that he worked for, the was a fiduciary, was the plan administrator? Yes. Who was the plan administrator? The identified plan administrator in the policy is Thomas Weissel. And their position is that he was entitled to this money. Their position was that they had a legal, not just a moral, obligation to pay Mr. Stephan. And that this was, in fact, should have been the basis for the calculation under the insurance plan, is that right? Correct. So you have the discretionary acts section, maybe there's another one, but the one I'm looking at says that in exercising its discretionary powers, the plan, the plan administrator, and any designee which shall include Unum will have the broadest discretion, and benefits will be paid only if the plan administrator or its designee, including Unum, decides. So is there some provision that says that it's Unum by itself can make the decision, or do all the provisions talk about? On the certificate page of the policy, Your Honor, which is in the excerpts of record at page 34, that does indicate, sorry, did I have the right page? I might have the wrong page, but I took it as a given that Unum or its officers or agents made the discretionary determination. Well, they took the position that they made the discretionary determination, although they don't want to be. I guess what I'm asking is, is there an argument that or are you arguing that the employer's position is relevant to the discretionary determination directly, as opposed to as indicative of whether it was conflicted or not? Yes, for two reasons. The first reason is because of the language in the policy in the excerpts at page 68, and the second reason is based on a case that the district court had referenced from the Seventh Circuit, Hess v. Hartford, where the Seventh Circuit remarked that the employer's statement as to what compensation it was paying the employee is the best evidence of what that level of compensation is. And the third position is, unfortunately, it's an unpublished decision, but the recent decision in Sear v. Reliance Standard dealt with an agreement between the employer and the employee as far as what her compensation was to be on the date that she last worked, and this Court recognized that level of compensation. My time is running out. I would just like to very briefly touch on the fiduciary exception and then reserve the rest of my time if that's permissible with the Court. The fiduciary exception has only been dealt with by this Court in the United States v. Met case, but the recent Solis case that we cited in our 20HA letter is another circuit's view of the fiduciary exception's applicability in the United States v. Met case. It's a very different view of the Arisa context, and the important point to consider and where the district judge had erred is that the party's interests do not diverge until after the final claim decision is made. But does the context of an Arisa plan, is the fiduciary obligation to any individual or is it to the plan? As a follow-up. The fiduciary, 29 U.S.C. section 1104a1, the fiduciary has the exclusive duty to the plan participant, Mr. Stafford. As a group, but to an individual. I mean, it isn't true, as I understand it, that the insurance company has a fiduciary obligation to the plan participant with regard to the benefits.  to the plan participant with regard to the benefits. It couldn't be true, because the insurance company has a fiduciary obligation  That's exactly what Glenn v. Metlife says. Glenn emphasized that fiduciary obligation that is owed by the plan administrator, the insurance company, to the plan participant. In that case, Wanda Glenn. But there is all this language in various of these opinions that recognize that because the fiduciary — I understood it to be that the fiduciary obligation is to the plan as a whole and sometimes that fiduciary obligation requires that benefits to a particular individual be denied rather than granted because the plan as a whole depends upon it or depends upon there being money to pay other people. So the understanding is not that there is an obligation that runs to — if somebody had a fiduciary obligation to an individual with regard to benefits, they would presumably have to — and this doesn't have to do with the attorney issue, but it has to do more generally with whether there's a fiduciary obligation. There are not — their obligation is not to promote the interests of the individual beneficiaries, is it? Erisa has multiple fiduciary obligations, but in the case of the payment of benefits, there is a fiduciary obligation owed to the claimant to render a decision consistent with the plan document and consistent with the evidence presented to make sure that it's an accurate claim decision.  Thank you, counsel. You wanted to reserve, and I will allow an additional minute to your time for rebuttal. Thank you, Your Honor. In the light of our questioning. We'll hear from the other side. Good morning, Your Honors. Kevin Gill and my colleague, Anna Martin, on behalf of Defendant Human Life Insurance Company. What's your explanation for the language in the 207 document that — I'll read it here. I got it somewhere. The entire policy is replaced by the policy attached to this amendment. Amendment. It's replaced by this amendment, in effect. Sounds like a new policy. It doesn't sound like you're renewing a policy to me. Well, Your Honor, there are a couple of points. I mean, the reason for the new policy is because there were changes in benefit amounts that sort of peppered the entire policy. So does it make any difference if you amended the policy? You issued a new policy. Well, this is an amendment and not a new policy. And an amendment is an amendment just as, you know, an exception to a policy is an  It's not a new policy. And this is an exception. Well, it could be argued both ways, but it's not a — I mean, the very fact that we have a dispute here is an ambiguity, and if there's an ambiguity, doesn't the carrier lose? Well, Your Honor, I don't know if it is an ambiguity, because the amendment does say that this is an amendment which is a part of this group policy, right? And so the language of the policy, I mean, parts of it have changed, and it was easier to replace the policy. But most of the policy language stays the same and has been the same. It's only the changes that were required, either because, you know, there were higher benefits offered or because, you know, the CSA required changes of some languages. The CSA did not require a change of the discretionary language. And if you look at the CSA in ER 132, you'll see that, you know, the parties, you know, the California Department of Insurance and UNAM knew how to draft it so that any renewal would have to have the language. In Part 3 there, for self-reported conditions, Section 1 says, New claims submitted after the renewal date of a group policy to which they relate claim to. It says, you know, first renewal date of the group policy. So there, they're requiring a self-reported condition definition to be changed with the first renewal date. That language is not for discretionary authority. So the worst-case scenario, if we determine that the district court should have exercised a de novo instead of a discretionary review, where do we – where does this Court go from there? Well, the result is the same, Your Honor. Under the policy language, Mr. Steffan's, you know, benefits are based on his income up to the date of disability. Whatever his sort of average monthly income, because he was there for less than two years, it's from start date up through date of disability. Actually, you know, I have two things to say. First of all, is the relevant section of the CSA, Section 4a, discretionary authority, Respondents shall discontinue use of a provision that has the effect of conferring unlimited discretion? Well, the CSA is a little confusing because there are Section 4 and Section 5 sort of have this back and forth. Because 4 says, it doesn't say new policy, it says in any California contract sold after the date. Right. But what they're meaning is sold being first sold. You know, this is not a raise. Well, that's what you're saying it means, but I'm simply pointing out that it doesn't actually say new policy, which is what I thought it said. It says in any California contract sold. Right. And this is in changes in claims handling. And they're talking about discretionary authority here. And if you look, again, at the self-reported symptoms, right, they say discontinue it, just period, discontinue it, you know. And there's nothing about – there's nothing that says, oh, it's a policy sold for these other things. So the fact that all of these other things kick in, irrespective of whether a policy is sold or not, suggests that a policy being sold means something different than just every renewal. And Section 5, which goes to – let's see, where does Section 5 start? Well, I don't know. You know, I must say that looking at this language more directly than I've done before, it's – Section 5d)(2 says, any language having the effect of a discretionary authority provision shall not be applied to any California contract sold after the effective date. That seems to say even if it's in there, it's not to be applied. And then it says, a discretionary authority provision shall not be included in any new policy. So it seems to be two different points. One is that it shall not be included in any new policy, but the other one is that it should be applicable in any policy sold after the effective date. And isn't paying a new premium, selling or asking for a new premium, selling a California contract? No, Your Honor. It's not a new policy under it. I'm sorry. Just listen to me. All right. There are two sentences. One of them talks about new policy. Yes. The one before it does not say anything about new policy. Right? Correct, Your Honor. So I'm asking you whether it is not a fair reading of this that there are two things being said. One is it shouldn't be included in any new policy, but the second is that as to any California contract sold after the CSA effective date, even if it has the language of discretionary authority provision, it shouldn't be applied. Now, this piece can't be looked at in isolation, Your Honor. If you look, again, under self-reported conditions, which is D2 or D3, where they start to talk about shall not be applied in existing California contracts after the earlier of the date of their first renewal. So this is talking about, says a renewal is not a sale. It's an existing California contract that is renewed. And so right there is where the language shows that they're trying to say, you know, it's either first sold, first purchased, or, you know, it's a new policy. All right. Well, why don't you go on to the next to the merits of the calculation and the reasonableness or the lack of abuse of discretion in terms of the actions of the Administrator here? Certainly, Your Honor. Mr. Stefan joined Thomas Wiesel in April of 2007. This is an investment banking company. They know accounting. They know this stuff very well. They negotiated an agreement where he would get a bonus only after completing 12 months of, you know, satisfactory employment. But isn't it up to the company what satisfactory service? If it's satisfactory to them that he stay home because he's a quadriplegic, why isn't that satisfactory to you? Because they didn't pay him the bonus before he became disabled. Well, that's a different point. But, I mean, then you're into the question of whether you can prorate the bonus or whether it only matters when you actually get it. But, Your Honor, they didn't prorate the bonus. They gave him the full 12 months. Well, their evidence is that the company says they did on their books prorate the bonus. But their books don't show that. I mean, their books with the only books that they had before disability are his earning statements. His earning statements do not reflect any bonus paid. There's nothing in their books prior to, you know, when they paid the bonus that says they were accruing the bonus to him. That's just not there. There's nothing there. They say that after, you know, after Unamed issues this decision on appeal. They say, oh, well, we meant to do it. And they changed their practice so that now they started to pay premium on a higher level for, you know, for the partners so that they would get the maximum thing. They didn't pay premium on a higher level. They paid premium only on his $200,000 base salary. Yeah, but didn't the record demonstrate that premium paid was not a very reliable source of evidence for anything? Well, it's a reliable source for showing what their intent was, Your Honor. Well, but it's not – it's a factor. But it's – there are a number of other factors that they thought that they were morally, you know, bound. They tuned up the premium payment at the end of the year to show that, you know, they owed it, even though they didn't pay it on time. You know, there's a lot of factors here that showed that just because of the fact that you mentioned that it wasn't due at the end, that they actually felt it was due at the time. So getting down to what the case is all about, how did you show that in exercising your discretion as the plan administrator here, that the fact that you were going to – that you didn't factor in the fact that you were going to have to pay it, and therefore, that fact that you were going to pay it didn't have anything to do with your decision-making? In other words, your structural – your structural conflict didn't negate any logic in your decision that he wasn't entitled to this money. What demonstrates that you negated your structural conflict? Well, I have a couple of points in response, Your Honor. First, to the specific question about premium true-up, they never paid – TWP never paid an increased premium for Mr. Wiesel, whether it was before disability, after – never happened. It never happened. So the premium that was paid was based on what level of compensation? It was based on his $200,000-a-year base salary. Two hundred? Yes. That's all they ever paid. They never paid cents. I thought they said they subtly tuned these up. Quite the opposite, Your Honor. That is why during oral argument on the summary judgment, counsel offered to pay the $200,000, and the court thought that was important. They had not paid it up until then. What is the language – where is the language that you rely on under discretionary authority? There are a couple places, Your Honor. Let me find them. We've got it, first of all, at ER-63. And what is in ER-63? It's part of the plan, and it says that TWP, Thomas Wiesel, is the plan administrator. And named fiduciary of the plan with authority to delegate its duties. Right below there, then, TWP delegates that – the duty to do claims to the insurer. The plan is administrated – administered by the plan administrator. Benefits are administered by the insurer and provided in accordance with the insurance policy issued to the plan. On ER-63, I'm not seeing that. Oh, I see. Okay. And so there is one place where it's an express delegation of benefits are administered by the insurer, not by both. And then if you go to ER-43, we have another grant of discretionary authority which says, when making a benefit determination under the policy, UNAM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy. So when it comes to benefits, you know, UNAM is the entity that is making those decisions. UNAM is the entity that the plan – All right. And then I had another question. Your – it seems to me that at least in large degree, as you argued it, and certainly as the decision was made, the assumption – the assertion was made that the policy says that the monthly earnings depend on what you actually received. And I'm not seeing that in the policy. Okay. If – if ER-48. Okay. Right. And you have two subsections. Exactly. And certainly with regard to the first subsection, i.e., if you – reliance on the two calendar years just prior, it does say compensation received from your employer, but it doesn't say that in B. But it's all part of one sentence, Your Honor. So it's either compensation as received or the period of employment with your employer if you have been employed less than two years prior to your date of disability. So with regard to the B, it just says monthly earnings means your average gross monthly income as figured for the period of your employer with your employer if you have been employed less than two years, and it doesn't say it depends on what you actually received. It is part of the same sentence, Your Honor, but there is an or. But the or is meant to talk about the timing, the time frame, because there is not the same prior date of disability. Well, that may be, but if I thought that your reading of that provision was just totally wrong because you were reading a received into B when B wasn't there, then do I find that you're you exercise your discretion arbitrarily? Well, Your Honor, here, he Stefan became disabled in August. He applied for benefits in September. Unum issued his decision and started paying him benefits from November of 2007. Even by then, he had not received any bonus. It wasn't until after Unum's. It doesn't say received. It says what's your income. And if the understanding is that I have a prorated amount of money that's due to me, but it's not going to be paid until later, that doesn't make it not my income. Unless it says so, it doesn't say so. Well, Your Honor, respectfully, I think that it does say that. I think that it says your income, you know, prior to date of disability. So your position depends on reading the word received into B, although it's not there. That's part of our position. But again, he didn't receive any bonus until December of 2008, after his attorneys had made their presence known to Unum, to everyone. Then he receives a bonus. They, Thomas Wiesel, said they were going to morally honor the contract. And they've listed it. Now, where are the words morally honor? Let's see. I have it flagged, S.E.R. 33. Could you tell me where, I want to back water, where in the record reflects that you, in your decision-making, took into account the structural conflict of interest you had since you were going to pay it if you determined the other way? There are facts on both sides. Where does it show that you took into consideration your structural conflict in making your decision? Your Honor, the structural conflict is something that was discussed with California. We have a settlement agreement with California where we've changed both the way that we, you know, the language of the lawsuit. But look, let me get it straight here. You had a structural conflict with the plaintiff in this case. Yes, Your Honor. There are good arguments on both sides, and maybe you have a better argument. Maybe you don't. But you also have a structural conflict, meaning that you're going to pay this thing if you rule again in the plaintiff's favor. What shows in this record that you took that into consideration when you made your determination that he wasn't entitled, that this was not an earning that he had received? Your Honor, the way that Unum shows that is to consider all of the evidence that's submitted to it, to, you know, evaluate it, to discuss it, not to ignore anything, but to give everything consideration. And that's what Unum did in its initial decision and then in its decision on appeal. So you're showing that you took everything into consideration. But you don't you're not pointing to anything in this record that where you said I have that you took into consideration the structural conflict. In other words, even if you didn't have a structural conflict, you would have to do exactly what you mentioned that you did. Now, in addition to what you had to do, you also had to take into consideration a structural conflict. There's nothing in this record that indicates that you took that into consideration or that the district court weighed it in determining whether or not you properly exercised your discretion. Well, Your Honor, I disagree with you there. The district court did talk about the structural conflict. Judge Patel did weigh it and did say she did not see any evidence that it played a significant role in the decision here. That's actually what she held. Well, that's what she held, but she held it in a vacuum because there were no facts in this record from your part of, from your, from your side, which showed that the structural conflict was properly discounted or avoided. What in the record, except the fact that you reviewed all the facts and it came into determination, shows that you also took into consideration your structural conflict? There's no evidence that there was any reason to, you know, there's no evidence that there was any pressure on anybody to make a decision other than based on what the specifics of this claim and the specifics of this policy were about. Yeah, but, sir, that's the exact same thing you would have to do if there was no structural conflict. Now, in addition to what you usually have to do, you have a structural conflict. You're the, you're the guy that has to pay out the money. And there's nothing in this record, and there's nothing in the district court's opinion, that indicates that that was something that was explained away, that it didn't affect your decision-making. Where does that leave me? Well, I disagree, Your Honor. Again, I think that Munim's decision-making is, I mean, they go through their reasoning and they say, here's the plan, here's what, here's the evidence that we have, here is the decision that flows from here to here to here, you know, they're trying to lay it out so that there's nothing hidden. The structural conflict is inherent in insurance. Insurance is inherently structural conflict. Oh, no, it's not, because the insurance company, we have risk plans all the time where the carrier is not the person paying the money, making the determination. If the carrier is not making the determination, there's no structural conflict. You're correct, Your Honor. This case is different. Well, this case, I mean, I don't know if this case is different. This case is the way that it usually is except that I've been involved with it. Granted, there are other ways of doing it. To, I mean, I guess you're looking for a specific statement that, you know, the claims  Oh, no, no. I'm looking for evidence, facts, which show that the decision-maker in making the decision sufficiently avoided what is a structural conflict. And there's no – and they do that by not – there's no evidence in the record or anything that says that there was any pressure to make any decision in any way. And what they do is they try to keep the claims administrator isolated. They don't have – they don't have any pressure on them. All they do is they look at the evidence, they look at the policy, they try to develop the policy, they try to develop the decision. All right. Thank you, counsel. Our questions have taken you way over time. Thank you. Mr. Dabowski, you have some reserved time. Let me just, sort of following up on Judge Cowan's question, what should the insurance company have recited or done to respond to Judge Cowan's concern about the structural conflict? Well, I already mentioned that in response to an earlier question, that upon receipt of a report from a certified public accountant and Thomas Weissel's judgment and the general counsel saying, this is basic accounting, have an accountant look at this. You should have had an accountant look at this instead of just snap and make a decision. No, but I'm talking about what recital with respect to its structural conflict would be necessary. It's not a recital, Your Honor. It's just a showing from the course of the claim record that steps were taken to insulate themselves from the conflict. That's what the Supreme Court demanded in Glenn. Walling off the claims administrators from financial considerations is one step that can be taken. But in this case, they did nothing of the kind. They just quickly issued a decision. And they issued a decision based on a provision that they implied in the plan that's not stated in the plan that was alluded to by defense counsel in response to Your Honor's questions. There is no requirement in this plan that the money for the bonus had to have been paid out prior to the date of disability. And, in fact, Judge Patel in her ruling cited a provision of the plan at page 36 of the excerpts that says the amount you receive is based on the amount you earned before your disability began. Thomas Weissel reported to UNUM when the claim went in, and this is the excerpts at page 76, Mr. Stephan's earnings were $500,000 per year. And, of course, they're not going to pay the premiums after UNUM has firmly and finally said, we're not going to pay them. What are they going to do, write UNUM a check for the premiums when they know that there's not going to be any benefit paid for that? They would have paid the premiums if they had approved the claim, just as they did every prior year from 1999 to 2007 when this claim was accrued. Go ahead with your last argument. The only other point that I wanted to make was that if the Court does apply a de novo standard under the doctrine of contraprofarentum, the plaintiff would have to win this case. This is an ambiguous plan. But even under a deferential standard and taking the conflict into consideration, contraprofarentum is exactly what Glenn was alluding to, that the conflict is a tie-breaking factor. Contraprofarentum is a rule of contract construction that's a tie-breaker. And for that reason, this Court should reverse the court below and enter judgment in favor of Mr. Stefan. Thank you, counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Cowen, Berzon